# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-3626

_____

Janet Lundquist

*Plaintiff - Appellant*

v.

University of South Dakota Sanford School of Medicine

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 15, 2012
Filed: February 5, 2013

_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Janet Lundquist commenced this action alleging that her former employer, the University of South Dakota Sanford School of Medicine (the "School of Medicine"), violated the Americans with Disabilities Act (ADA) by refusing to accommodate her mental and physical disabilities and by responding to her requests for accommodation with hostile actions that caused her constructive discharge. See 42 U.S.C. §§ 12112,

12203. After the close of discovery and a hearing, the district court[1] granted the School of Medicine summary judgment on the ground that it lacked the capacity to be sued under state law and Rule 17(b) of the Federal Rules of Civil Procedure. Alternatively, the court concluded that summary judgment was warranted because Lundquist had failed to present sufficient evidence of unlawful discrimination or retaliation. Lundquist appeals. Reviewing the grant of summary judgment *de novo*, we agree the School of Medicine lacks the capacity to be sued and therefore affirm without reaching the merits of Lundquist's ADA claims.

Rule 17(b) defines when a party has the capacity to sue or be sued in federal court. Unlike the doctrines of standing and real-party-in-interest, "capacity is conceived to be a party's personal right to litigate." 6A Wright, Miller & Kane, Federal Practice and Procedure § 1542 (3d ed. 2010). The capacity of a unit of state or local government that is incorporated, like that of a private corporation, is determined "by the law under which it was organized." Rule 17(b)(2); see 6A Wright, Miller & Kane at § 1562; Campbell v. Davol, Inc., 620 F.3d 887, 895 n.6 (8th Cir. 2010). The capacity of an unincorporated unit of government is determined, in most cases, "by the law of the state where the court is located." Rule 17(b)(3).

The South Dakota Constitution provides that the legislature "shall direct by law in what manner and in what courts suits may be brought against the state." S.D. Const. Art. III § 27. The legislature by statute created the University of South Dakota, S.D. Codified Laws § 13-57-1, and later its School of Medicine, § 13-57-3.1. However, the University was not given the power to sue and be sued. Rather, the statutes created a nine-member Board of Regents that was explicitly granted "power to sue and be sued," § 13-49-11, and placed the University "under the control of the Board of Regents," § 13-57-1. Thus, the district court held that it is the Board of

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

Regents, not the University or its School of Medicine, that has the personal capacity to sue and be sued under South Dakota law. Accord Pushkin v. S.D. State Univ., No. 10-4108, 2010 WL 5089480, at *1 (D.S.D. Dec. 8, 2010). We agree.

Following the decision in Pushkin, Lundquist commenced a separate action against the Board of Regents and moved to consolidate the two cases. See Complaint, Lundquist v. S.D. Bd. of Regents, No. 11-cv-04098 (D.S.D. July 13, 2011). The district court denied the motion to consolidate and subsequently dismissed the second action for inadequate service. As Lundquist has not appealed that ruling, the only issue before us is the grant of summary judgment in this case.

On appeal, Lundquist does not contest the district court's ruling that the School of Medicine lacks capacity to sue and be sued under South Dakota law. Instead, she argues that her claims should not have been dismissed under Rule 17(b) because they fall within an exception to the general rule that state law controls this issue:

> **(A)** a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws . . . .

Fed. R. Civ. P. 17(b)(3)(A). She asserts that the University "partnered" with Sanford Health, a regional health-care system, in locating the School of Medicine on the campus of Sanford Hospital and thus the School of Medicine is a partnership that may be sued in its common name. The district court examined this contention, using information from the School of Medicine's website and other public sources because Lundquist had conducted no discovery on the issue. The court concluded that the School of Medicine is not, and does not hold itself out to be, a "legal partnership" with Sanford Health, and the exception in Rule 17(b)(3)(A) therefore does not apply.

We need not inquire into the relationship between the School of Medicine and Sanford Health because there is a more basic reason the exception in Rule 17(b)(3)(A) does not apply in this case. By its express terms, for a federal action venued in South Dakota, the exception permits a partnership or unincorporated association "with no . . . capacity" to sue or be sued under South Dakota law to be sued in its common name in an action to enforce federal rights, such as the ADA claims Lundquist asserted. When state law *does* grant such an entity the capacity to sue or be sued, but specifies the manner in which that capacity may be exercised, state law limitations on the manner of exercise apply. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany, 250 F. Supp. 2d 48, 61-62 (N.D.N.Y. 2003). That is the situation here. The South Dakota legislature did not deny the University and its School of Medicine the capacity to sue and be sued. Rather, the legislature mandated that the capacity resides in the Board of Regents, the unit of government that controls the University. Thus, the School of Medicine only has the capacity to be sued in an action against the Board of Regents, whether that action asserts federal claims against the School of Medicine as a stand-alone entity, or as a "partnership" with Sanford Health.[2]

The judgment of the district court is affirmed.

_____

_____

[2]This principle is consistent with the original purpose of what is now Rule 17(b)(3)(A). The exception essentially codified the decision in United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 385-92 (1922), that a multi-national labor union could be sued for violations of the federal antitrust laws in its common name, even though at common law it could only be sued in the name of its four hundred thousand members. See Fed. R. Civ. P. 17 advisory committee's note. We also note that the few courts to consider the issue have concluded: "Nothing in the language of Rule [17(b)(3)(A)] or in the early case law that led to the adoption of Rule 17 . . . warrants an extension of Rule [17(b)(3)(A)] to governmental units." Dean v. Barber, 951 F.2d 1210, 1214 n. 4 (11th Cir. 1992). We need not decide that question.